# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON KARRIEM MINCY,** | : | **CIVIL ACTION NO. 1:08-CV-0507** |
| **Plaintiff,** | : | **(Judge Conner)** |
| v. | : | |
| **WARDEN DEPARLOS, et al.,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Hilton Karriem Mincy ("Mincy") initiated this action on March 20, 2008. (Doc. 1.) The matter is presently proceeding *via* an amended complaint which was filed on December 20, 2008. (Doc. 24.) Therein, he sets forth a number of claims including civil rights violations pursuant to 42 U. S.C. §§ 1983, 1985, violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, and violations of the Pennsylvania Constitution and Political Subdivision Tort Claims Act, 42 PA.C.S.A. §§ 8541-8542.

Presently pending is a partial motion to dismiss (Doc. 26) plaintiff's amended complaint (Doc. 24) pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants Warden DeParlos ("DeParlos"), Deputy Warden Blank ("Blank"), and Lieutenant Hartly ("Hartly"). For the reasons set forth below, the motion will be denied. Also before the court is a motion to dismiss (Doc. 37) filed on behalf of all remaining defendants. The motion will be deemed withdrawn for failure to file a supporting brief and these defendants will be directed to file an answer to the amended complaint.

**I.     Allegations of the Complaint**[1]

The allegations in this matter, all of which stem from Mincy's incarceration in the Lycoming County Prison, date back to September 21, 2007, when Mincy, verbally complained to defendant Hartly, among others, about his Ramadan meals, other issues relating to Ramadan, and interference with attending "Friday Jumuah Service."[2]  (Doc. 24, at 3, ¶¶ 1-4.)  On September 28, 2007, Lieutenant Hegenstaller informed him that the prison administration had a meeting and "that they were not going to do anything with regards to the Rahmadahn meals, etc. . . ."  (Id. at § 6.)  A few days later "Defendant Hartley told Plaintiff that Rahmadahn was almost over and the Plaintiff should just 'accept it and deal with it.'  Lieutenant Hartly stated that the prison 'administration' was aware of the problem and that they were not going to do anything about it."  (Doc. 24, at 4, ¶ 7.)

Thereafter, Mincy sent a "letter-grievance" to defendants DeParlos and Blank, and other prison staff, detailing the following complaints:

> (1) Denial of hot meals; (2) Denial of medication prior to fasting and after breaking fast (prison staff refused to make accommodations around the feeding times for inmates taking non-life-threatening medication); (3) Denial of Rahmadahn feast at the conclusion of Rahmadahn; (4) Interference with access to Friday Jumuah service; (5) Intentional lesser portions of food for inmates fasting; (6) Refusal of prison to put in place a means for the Plaintiff and other

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  *See infra* Part II.

[2] Judicial notice is taken of the fact that Ramadan is a month-long Islamic religious observance that involves spiritual purification achieved through fasting, self-sacrifice and prayers.  It is also noted that plaintiff spells "Ramadan" a number of different ways.  For purposes of consistency, other than when directly quoting plaintiff, the court will refer to it as "Ramadan."

> inmates to donate "Zakat" (charity) which is mandatory during Rhamdahn; (7) Denial of sufficient access to Talim service; (8) The prison's refusal to provide the same access to Holy Quran's as it does to Bibles; (9) The intentional abuse of authority by Lycoming County Prison officers, in which the officers go out of their way to single-out those attempting to fast, and to make it a hardship on those inmates that are fasting; and (10) The disparity in treatment of the Plaintiff, Muslim Inmates and those who participate in Islamic activities, to those who are Christian or those who participate in Christian activities, in that the prison's staff and officers make sure that Christian holidays are respected and observed to the fullest, but otherwise takes a totally opposite approach in it's [sic] treatment of Muslims and/or those who participate in Islamic activities; which is alos [sic] done to intentionally discourage inmates that are Muslim from continued practice, to discourage those who are not Muslim but are interested in the faith, form [sic] pursuing their interest in faith.

According to Mincy, defendants refused to respond to the grievance. (Doc. 24, at 5, ¶ 13.) He alleges that defendants implemented customs, policies and practices that prohibited or interfered with the free exercise of religion, as detailed in his grievance. (Doc. 24, at 6, ¶ 17.) He also claims that he was subjected to harassment and retaliation.

The allegations are spread among five counts in the amended complaint and include violations of his First and Fourteenth Amendment rights of the United States Constitution, Article I, §§ 1, 26, 28 of the Pennsylvania Constitution, violations of the Religious Land Use and Institutionalized Persons Act of 2000, and violations of the Pennsylvania Political Subdivision Tort Claims Act. He seeks declaratory and injunctive relief as well as nominal, compensatory, and punitive damages. (Doc. 24, at 10.)

## II. Motion to Dismiss Filed on Behalf of DeParlos, Blank, and Hartly

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8

4

requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**B.     Discussion**

    1.     First Amendment

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

5

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004). To establish a claim under this section, the plaintiff must show the deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants seek to dismiss plaintiff's First Amendment claims. The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner, 482 U.S. at 89. Prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987). It is well-established that only those beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Dehart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981)(describing three indicia of religion (1) an attempt to address "fundamental and ultimate questions" involving "deep and imponderable matters"; (2) a

comprehensive belief system; and (3) the presence of formal and external signs like clergy and observance of holidays.).

Defendants argue that the First Amendment claims are barred by the doctrine of *respondeat superior*. Liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d at 1207. To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Mincy argues that his amended complaint is not based in *respondeat superior* in that it contains allegations that "Defendants interfered with [his] religious rights and practice during the Holy Month of Rahmadahn, from the dates of September 21, 2007 to October 8, 2007 (see ¶¶ 1-13 of Amended Complaint), and continued to interfere with his religious rights after the conclusion of Rahmadahn (see ¶ 15 of the Amended Complaint.)" (Doc. 34, at 2, 6.) He asserts that the defendants had the authority to act, but refused to do so. For instance, he verbally complained to Hartly about his Ramadan meals, other issues relating to Ramadan, and interference with attending services. In response to prisoner complaints, Lieutenant Hegenstaller allegedly informed him that the prison administration had a meeting and decided not to do anything with respect to the Ramadan meals and

7

other issues. Mincy also avers that Hartley told him that Ramadan was almost over and that he should just accept the notion that no corrective action would be taken. Hartly purportedly stated that prison administration was aware of the problem and chose not to do anything about the situation. Finally, Mincy asserts that defendants implemented customs, policies and practices that prohibited or interfered with the free exercise of religion. The foregoing allegations are sufficient to survive defendants' motion to dismiss the First Amendment claim.

2. RLUIPA

Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); see also Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

Although Congress intended that RLUIPA be construed "in favor of broad protection of religious exercise," see 42 U.S.C. § 2000cc-3(g), Congress also "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Cutter, 544 U.S. at

723. Congress indicated that in the event an inmate's request for religious accommodation would "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." Id. at 726.

Under RLUIPA, the plaintiff must show that his religious exercise has been burdened substantially by the challenged conduct. Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). The Third Circuit Court of Appeals has found that for the purposes of RLUIPA, a substantial burden exists where: "1)a follower is forced to choose between following the precepts of his religion and forfeiting the benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Id. at 280. If the plaintiff shows that prison administrators' action or inaction has imposed a substantial burden on the exercise of the plaintiff's religion, the prison administrator must establish that the challenged conduct furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest. Id. at 283.

In the instant case, the complaint contains unambiguous allegations that defendants substantially burdened Mincy's exercise of religious practices sufficient to allow the RLUIPA claim to go forward.[3]

### III.  **Injunctive Relief**

Defendants seek to dismiss Mincy's request for injunctive relief arguing that because he is no longer incarcerated at Lycoming County Prison, any request for injunctive relief is rendered moot. (Doc. 30, at 7-9.) In support of this argument, they state that Mincy is unable to prove that the relief requested is required by equity and that the relief requested is calculated to alleviate a harm he continues to suffer. (Doc. 30, at 8, citing DeFunis v. Odegaard, 416 U.S. 312, 319 (1974).)

Mincy disagrees. In relying on the "capable -of- repetition" doctrine, he insists that he can make a showing that there is a substantial likelihood that he will again be subjected to the same violations of which he complains of based upon the fact that since his incarceration in the fall of 2007, he has been housed at the Lycoming County Prison on three additional occasions. (Doc. 34, at 8, 9 citing City of Los Angeles v. Lyons, 461 U.S. 95 (1983).) Further, he represents that he is actively litigating civil and criminal matters in that in that county, and it is

---

[3]Once the plaintiff shows that prison administrator's action or inaction had imposed a substantial burden on the exercise of his religion, the prison administrator must establish that the challenged conduct furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest.

therefore likely that he will be housed in the institution again.  (Doc. 34, at 9.)
Defendants do no challenge this representation.

As noted in City of Los Angeles, the "capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality. Defunis v. Odegaard, 416 U.S. 312, 319 [ ] (1974)."  City of Los Angeles, 461 U.S. at 109.  Mincy has met this threshold burden.  Defendants' motion will be denied with respect to the request for the injunctive relief.

## IV. Motion to Dismiss Filed on Behalf of Remaining Defendants

A motion to dismiss Mincy's amended complaint was filed on behalf of all remaining defendants on April 13, 2009.  (Doc. 37).  Defendants have failed to file a brief in support of the motion, see M.D.Pa. LR 7.5. ("Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motions shall be deemed to be withdrawn.").  The motion will be deemed withdrawn.  See L.R. 7.5.

**V.     Conclusion**

The motion to dismiss (Doc. 26) filed on behalf of defendants DeParlos, Blank and Hartly will be denied. The motion to dismiss (Doc. 37) filed on behalf of all remaining defendants will be deemed withdrawn.

An appropriate order is attached.

                                       S/ Christopher C. Conner
                                       CHRISTOPHER C. CONNER
                                       United States District Judge

Dated:      August 19, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON KARRIEM MINCY,** | : | CIVIL ACTION NO. 1:08-CV-0507 |
| **Plaintiff,** | : | (Judge Conner) |
| v. | : | |
| **WARDEN DEPARLOS, et al.,** | : | |
| **Defendants** | : | |

# **ORDER**

AND NOW, this 19th day of August, 2009, upon consideration of defendants' motions to dismiss (Docs. 26, 37) plaintiff's amended complaint (Doc. 24) it is hereby ORDERED that:

1. The motion to dismiss filed (Doc. 26) on behalf of defendants DeParlos, Blank and Hartly is DENIED.

2. The motion to dismiss filed (Doc. 37) on behalf of all remaining defendants is DEEMED withdrawn. See L.R. 7.5.

3. All defendants shall file an answer to the amended complaint (Doc. 24) within twenty days of the date of this order.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge